SCOTT GARDINER *v.* CONSERVATION COMMISSION OF THE TOWN OF WATERFORD ET AL.
(14387)
ROBERT FROMER *v.* REYNOLDS METALS DEVELOPMENT COMPANY ET AL.
(14396)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, Js.

Argued January 15—decision released May 12, 1992

*Ronald P. Sherlock,* for the appellant in the first case (plaintiff Scott Gardiner).

*Robert Fromer,* pro se, the appellant (plaintiff) in the second case).

*Grace M. Dodier,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Joseph Rubin* and *Janet Brooks,* assistant attorneys general, for the appellee in the first case (defendant commissioner of environmental protection).[1]

*Thomas J. Londregan,* for the appellee in both cases (defendant Reynolds Metals Development Company).

SHEA, J. In each of these cases, the plaintiff has appealed from the judgment of the trial court affirming the decision of the defendant conservation commission of the town of Waterford[2] to grant the application of the defendant Reynolds Metals Development Company (Reynolds) to conduct regulated activities on land classified as wetlands within a tract of 188 acres proposed for a subdivision in order to create an industrial park. In the first appeal, the plaintiff, Scott Gardiner, who owns land adjoining the proposed development and is thus entitled to appeal pursuant to General Statutes § 22a-43, claims that the conditions attached to the permit granted by the commission provide for the ex parte submission by Reynolds of certain engineering data related to the propriety of issuing the permit, which he will have no opportunity to challenge, and that, therefore, his constitutional right to due process of law has been violated. In the second appeal, the plaintiff, Robert Fromer, who intervened in the proceedings of the commission by filing a "verified pleading" pursuant to General Statutes § 22a-19 (a) alleging the likelihood of adverse environmental effects from Reynolds' proposal, has raised four issues: (1) whether he was entitled

[1] The commissioner of environmental protection appeared in the trial court as a party in both appeals pursuant to General Statutes § 22a-43 (a). In this court, however, the commissioner presented argument and filed a brief only in the first case, Gardiner's appeal.

[2] The conservation commission of the town of Waterford acts as the inland wetlands agency for that town pursuant to General Statutes § 22a-42 (d).

to raise issues other than those that concern the environment; (2) whether the commission properly found that Reynolds' proposal would not have any adverse effect upon the wetlands area involved; (3) whether consideration of environmentally feasible alternatives was necessary; and (4) whether the trial court properly refused to consider the adequacy of the Waterford wetlands regulations for protecting the rights created by the environmental protection statutes, General Statutes §§ 22a-14 through 22a-20, and resolved certain issues relating to ecology on the basis of inexpert knowledge. We affirm the judgments.

There is no dispute about the facts as set forth in the trial court's comprehensive memorandum of decision in each case. Reynolds applied to the commission pursuant to General Statutes § 22a-42a (c) for a permit to conduct regulated activities on .49 acres of the total 34.05 acres of wetlands included in the 188 acre tract of land, formerly the Waterford-New London airport, upon which an industrial park was to be located. The application sought to construct roadways across certain watercourses and wetlands, to establish sediment basins adjacent to wetlands, to install sewer and water lines under watercourses and to discharge storm water upon wetlands.

After a public hearing that occupied four sessions of the commission, the application was granted on December 21, 1989, to allow: (1) the construction of nine detention basins adjacent to wetlands and watercourses; (2) the discharge of storm water onto wetlands and watercourses; (3) road crossings for Jordan Brook and No Name Brook; (4) utility crossings for Jordan Brook, No Name Brook and a tributary; and (5) permanent filling of .20 acres and temporary disturbance within .29 acres of wetlands. The commission, however, imposed on Reynolds twenty-nine conditions relating to the grant of the permit "in order to further protect

the inland wetlands and groundwater on this site and to minimize impacts associated with the proposal." In addition to the conditions regarding the design and location of one of the nine detention basins approved, the commission provided for scheduled maintenance of parking areas, catch basins and detention basins, for restrictions upon the use of fertilizers and herbicides, for installation of test wells in order to monitor water quality, for a conservation easement along a portion of a brook, for open space parcels and buffer zones, and for erosion controls and other safeguards during construction of the project.

I

In the first appeal Gardiner claims that certain conditions imposed by the commission allow the ex parte submission of engineering data by Reynolds relevant to whether the permit should have been granted and that he will have no opportunity to challenge the information to be provided, thus depriving him of due process of law in violation of his constitutional right to a fair hearing. This argument focuses upon the four conditions requiring: (1) a full subsurface investigation of the area where one detention basin is to be located in order to determine whether a pollution hazard is created by its proximity to the Devonshire landfill, a former waste disposal area; (2) a special design of this basin in order to prevent seepage between the basin and the landfill for the purpose of protecting water quality; (3) a water monitoring program related to leachate that may emanate from another waste disposal area, the Waterford landfill; and (4) submission of engineering calculations for two of the detention basins, including the one near the Devonshire landfill, in order for the town engineer to review the structural integrity of these and other similar basins. Gardiner maintains that the commission should not have granted the permit until the additional information demanded as

a condition of the permit had been presented at a public hearing and subjected to examination by him and other opponents of the application.

The basis for the commission's concern about locating the detention basin in proximity to the Devonshire landfill was a letter from the department of environmental protection (DEP) commenting upon Reynolds' proposal. The letter contained a statement that the basin "abuts, and may overlie, portions of the Devonshire landfill." At the public hearing no other evidence was presented to indicate that the proposed detention basin would be located over a landfill.

Both parties rely upon precedent involving ex parte communications to a commission following a public hearing but before it has rendered a decision. In such a context we have declared that, "[b]ecause the commission is composed of laymen, it is entitled to professional technical assistance in carrying out its responsibilities. . . ." *Hawkes* v. *Town Plan & Zoning Commission,* 156 Conn. 207, 212, 240 A.2d 914 (1968). We have placed emphasis on the circumstance that such ex parte communications have usually come from public officials having no personal or financial interest in the controversy. *McCrann* v. *Town Plan & Zoning Commission,* 161 Conn. 65, 78, 282 A.2d 900 (1971); *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 251, 230 A.2d 595 (1967). We have also indicated that whether "[t]he information requested by the commission was within the scope of the [matters] presented at the public hearing" is significant in assessing the prejudicial effect of such a communication. *Hawkes* v. *Town Plan & Zoning Commission,* supra, 212.

We need not consider whether the additional information required to be submitted by Reynolds as a condition of the permit would qualify as a permissible ex parte communication under the standards established

by our precedent, because that information cannot have had any effect on the decision of the commission presently before us. At this time, therefore, there has been no violation of Gardiner's due process right to a fair hearing. We do not know precisely what information will be submitted or what its significance will be with respect to the need for modifications of Reynolds' proposal. The commission may well provide an opportunity for Gardiner or other interested persons to challenge the information when it is furnished. We have suggested that administrative boards allow such an opportunity when information pertinent to an application is requested after the close of a public hearing. *Kyser* v. *Zoning Board of Appeals,* supra, 251–52. "It is far better . . . that no room be given for suspicion or cavil and that every effort be made to avoid the creation of a situation which might tend to weaken . . . public confidence in the action of a zoning board . . . ." Id.

It is conceivable that an additional public hearing may be held if the information requested should raise serious concerns among the commission members about the likelihood of pollution. The commission regulations provide that, "[i]f the Agency finds that an activity for which it has granted a permit, or granted a permit with conditions, has had a more severe impact or effect on the inland wetland or watercourse than was projected by the applicant . . . the Agency may revoke such permit and require the permittee to cease all site work and file a new application for review."[3] General Stat-

---

[3] Section 5.10 of the Waterford inland wetlands regulations provides: "If the Agency finds that an activity for which it has granted a permit, or granted a permit with conditions, has had a more severe impact or effect on the inland wetland or watercourse than was projected by the applicant, or does not in fact involve a permitted use, the Agency may revoke such permit and require the permittee to cease all site work and file a new application for review."

utes § 1-19 (a) of the Freedom of Information Act provides to "every person" a right to inspect public records such as the documents containing the information requested by the commission from Reynolds. Gardiner thus will have an opportunity to review Reynolds' submission and to inform the commission of any inadequacies that he may discover or any additional concerns raised by the information received. If the commission should fail to take appropriate action, Gardiner, as an adjoining landowner whose property may be adversely affected by pollution resulting from Reynolds' proposed development of an industrial park, would not be without recourse. "For over one hundred years in this state, we have recognized the general power of equity to afford relief by injunction and damages for injury caused by a nuisance created by the unreasonable conduct on one's own property of an otherwise lawful activity." *Krulikowski* v. *Polycast Corporation,* 153 Conn. 661, 666, 220 A.2d 444 (1966).

Gardiner does not question the authority of the commission, as provided by § 22a-42a (d),[4] to attach conditions to the grant of a permit. The first and second conditions of which he complains, requiring a subsurface investigation of the location proposed for one detention basin because of its proximity to a landfill and a special design of that basin, were imposed because of the concern expressed in the DEP letter that it "abuts and may overlie, portions of the Devonshire landfill." The water monitoring program prescribed by the third condition, which required the installation of test wells, was another precautionary measure related to the presence of abandoned waste disposal sites on

[4] General Statutes § 22a-42a (d) provides in part: "In granting a permit the inland wetlands agency may grant the application as filed or grant it upon such terms, conditions, limitations or modifications of the regulated activity, designed to carry out the policy of sections 22a-36 to 22a-45, inclusive."

Reynolds' property. The fourth condition, requiring the submission of engineering calculations to substantiate the structural integrity of the basins, was merely an implementation of a previous request for the same information. Gardiner does not maintain that any of the conditions were unreasonable but that, because they require the submission of information that will not be subjected to the scrutiny of a public hearing, his constitutional right to a fair hearing has been violated. Presumably he would raise no such complaint if the commission had simply approved Reynolds' application without imposing the four conditions he challenges, despite the additional protection of the public interest that they afford. To adopt Gardiner's view would inhibit an inland wetlands agency in imposing such conditions as it deemed necessary to safeguard against the risk of pollution in the light of concerns raised during its deliberations. We conclude that Gardiner's rights were not violated merely by the attachment to a permit of conditions that required the submission of further information after the agency's decision had been rendered.

## II

In the second appeal the plaintiff Fromer claims: (1) he was entitled to raise not only environmental issues but also those having an "inextricable nexus" to issues directly affecting the environment; (2) there is insufficient support for the finding of the commission that Reynolds' proposal would have no adverse effect upon the wetlands; (3) consideration of alternatives was therefore necessary; and (4) the trial court improperly refused to consider the adequacy of the Waterford wetlands regulations for protection of the rights created by the environmental statutes.[5] We

[5] Fromer also claims that both the commission and the trial court decided sophisticated and technical issues involving biology, ecology and pollution without adequate expert testimony, despite their lack of expertise in these subjects. See *Feinson* v. *Conservation Commission,* 180 Conn. 421, 428–29,

are not persuaded that any of these claims requires reversal of the judgment.

## A

Fromer intervened in the proceeding before the commission pursuant to § 22a-19 (a), which, "[i]n any administrative, licensing or other proceeding" allows "any person" to "intervene as a party on the filing of a verified pleading asserting that the proceeding . . . involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." We have held that this statute confers upon anyone who complies with its requirements standing to raise *only* environmental issues. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 499–500, 400 A.2d 726 (1978). With respect to an inland wetlands agency, we have further limited such standing to the presentation of environmental issues within the jurisdiction of such an agency. *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250, 470 A.2d 1214 (1984).

Fromer maintains that he has standing to raise issues with an "inextricable nexus" to those directly affecting the "public trust in the air, water or other natural resources of the state," for which § 22a-19 (a) expressly gives him standing. He has presented this claim as an abstract proposition, however, and has not specified what issues having such a nexus he was barred from raising before the commission or in the trial court. Our examination of the references in the part of his brief discussing this claim does not indicate that, because of

429 A.2d 910 (1980). Fromer, however, has not specified which issues are claimed to have been decided without sufficient expert testimony. Because of this lack of specificity, this claim has not been adequately briefed. We therefore refuse to consider it further. *State* v. *Tatum,* 219 Conn. 721, 742, 595 A.2d 322 (1991).

his limited standing as an intervenor, he was prevented from advancing any claim or argument related to the environment. It would serve no useful purpose to discuss his "inextricable nexus" claim in the abstract.

B

The trial court concluded that the record adequately supports the implicit finding of the commission that the industrial park proposed by Reynolds, with the modifications necessary to comply with the conditions attached to the permit, was not likely to cause "unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state . . . ." General Statutes § 22a-19 (b).[6] We agree with the court that the record supports this finding. In its very comprehensive memorandum of decision, the court carefully reviewed Fromer's various claims and held that the commission's finding of the improbability of unreasonable pollution resulting from Reynolds' proposal was supported by substantial evidence and, therefore, could not be overturned. "In determining whether an administrative finding is supported by 'substantial evidence,' a court must defer to the agency's assessment of the credibility of the witnesses . . . even an expert, in whole or in part." *Briggs* v. *State Employees Retirement Commission,* 210 Conn. 214, 217, 554 A.2d 229 (1989). We are not persuaded that the trial court's resolution of this issue was erroneous, given the deference that a reviewing court must accord to the factfinding function of an adminis-

---

[6] General Statutes § 22a-19 (b) provides as follows: "In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

trative agency. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 539–42, 525 A.2d 940 (1987).

## C

The trial court construed § 22a-19 (b) not to require a municipal inland wetlands agency to consider alternatives to an applicant's proposal once the agency has found that "unreasonable pollution" is unlikely to result from granting the application. This analysis is flawed, however, because the determination of whether a specific degree of contamination or other environmental detriment is unreasonable may often turn on the availability of alternatives. Even minimal environmental harm is to be avoided if, "considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." General Statutes § 22a-19 (b). As Fromer correctly points out, § 6.1 (e) of the commission's regulations expressly requires the agency, in making its final decision on permit applications, to consider "[a]ll relevant issues including . . . [t]he alternatives to the proposed action, including a consideration of alternatives which might enhance environmental quality or have a less detrimental effect, and which could feasibly attain the basic objectives of the activity."[7] Municipal inland wetlands regulations must "give due consideration to the standards set forth in [General

[7] Section 6.1 (e) of the Waterford inland wetlands regulations requires the commission to consider "[a]ll relevant issues including, but not limited to, the following: i. The alternatives to the proposed action, including a consideration of alternatives which might enhance environmental quality or have a less detrimental effect, and which could feasibly attain the basic objectives of the activity. This should include, but is not limited to, the alternative of taking no action, or postponing action pending further study; the alternative of requiring actions of a different nature which would provide similar benefits with different environmental impacts, such as using a different location for the activity."

Statutes §] 22a-41." General Statutes § 22a-42 (e).[8] Section 22a-41,[9] which by its terms applies only to the commissioner of environmental protection, requires consideration of "all relevant facts and circumstances, including . . . (2) [t]he alternatives to the proposed action . . . ." We agree with Fromer that the Waterford inland wetlands commission was obliged to consider alternatives to the same extent that § 22a-41 requires the commissioner of environmental protection to do so in determining whether any degree of pollution likely to be generated by a proposed wetlands activity is unreasonable.

As the trial court found, however, the commission did consider many alternatives. The record indicated that numerous compromises and redesigns had been made, resulting from negotiations with town and state officials. Eleven alternative studies were discussed with the commission and its staff. A prior application was submitted but was withdrawn for further modifications. Alternatives for dealing with the leachate pool were considered, some of which one expert characterized as "virtually impossible." We agree with the court that "there was substantial evidence from which the Commission could have concluded that a permit with the

---

[8] General Statutes § 22a-42 (e) provides: "Municipal or district ordinances or regulations may embody any regulations promulgated hereunder, in whole or in part, or may consist of other ordinances or regulations in conformity with regulations promulgated hereunder. Any ordinances or regulations shall be for the purpose of effectuating the purposes of sections 22a-36 to 22a-45, inclusive, and, a municipality or district, in acting upon ordinances and regulations shall give due consideration to the standards set forth in section 22a-41."

[9] General Statutes § 22a-41 provides in part: "(a) In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed action;

"(2) The alternatives to the proposed action . . . ."

conditions imposed was better than the option of no action because Reynolds must now monitor the impacts of the *existing* landfill, whereas before, no monitoring was done or required." Fromer was allowed to present a list of alternatives, but failed to present specific evidence with respect to each or to convince the commission that any of his alternatives would be "feasible and prudent," as required by § 22a-19 (b).

## D

As his final claim, Fromer maintains that General Statutes § 22a-20[10] required the trial court to make a determination of whether the Waterford inland wetlands regulations are adequate to protect the rights established by the state Environmental Protection Act, General Statutes §§ 22a-14 through 22a-20. Apparently he relies upon the provisions of § 22a-20 that allow the maintenance of an action "to protect the rights recognized herein, where existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights" and further provide that "such procedures shall be reviewable in a court

---

[10] General Statutes § 22a-20 provides: "Sections 22a-14 to 22a-20, inclusive, shall be supplementary to existing administrative and regulatory procedures provided by law and in any action maintained under said sections, the court may remand the parties to such procedures. Nothing in this section shall prevent the granting of interim equitable relief where required and for so long as is necessary to protect the rights recognized herein. Any person entitled to maintain an action under said sections may intervene as a party in all such procedures. Nothing herein shall prevent the maintenance of an action, as provided in said sections, to protect the rights recognized herein, where existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights. At the initiation of any person entitled to maintain an action under said sections, such procedures shall be reviewable in a court of competent jurisdiction to the extent necessary to protect the rights recognized herein. In any judicial review the court shall be bound by the provisions, standards and procedures of said sections and may order that additional evidence be taken with respect to the environmental issues involved."

of competent jurisdiction to the extent necessary to protect the rights recognized herein." We need not in this case attempt to divine all of the ramifications of this obscure statutory language, because a necessary predicate to the application of these provisions is a finding of the inadequacy of existing administrative and regulatory procedures for protection of the rights created by the Environmental Protection Act. The trial court made no such finding and Fromer has not specified in what manner these procedures are claimed to be inadequate. The record indicates that he was given a full opportunity to be heard on the merits of his objections to the application. We reject his interpretation of § 22a-20 to require that the court "first determine the adequacy of the regulatory law to protect the Appellant's recognized rights" when all of the substantive claims raised have been adequately considered and no restraint has been imposed on their presentation.

The judgments are affirmed in both cases.

In this opinion PETERS, C. J., CALLAHAN and COVELLO, Js., concurred.

BERDON, J., dissenting in *Gardiner* v. *Conservation Commission* and concurring in *Fromer* v. *Reynolds Metals Development Co.* I disagree with the majority's conclusion that the due process rights of the plaintiff, Scott Gardiner, were not violated as a result of the commission's decision to grant Reynolds' application for a wetlands permit to conduct regulated activities, approval of which was conditioned on the ex parte submission of substantive engineering data by Reynolds after the close of the public hearing. The engineering data involves the location of a detention basin in proximity to the Devonshire landfill. The result of the majority's decision is that the commission will be allowed to consider the additional evidence submitted by Reynolds and make its decision on whether Reynolds

has sufficiently addressed the concerns regarding the detention basin, even though Gardiner will not have the right to cross-examine Reynolds' experts on that information or to present rebuttal evidence.

We have long held that "[d]ue process of law requires that the parties involved [in an administrative proceeding] have an opportunity to know the facts on which the commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence." *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 207, 355 A.2d 21 (1974). In *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 477–78, 562 A.2d 1093 (1989), Justice Shea, writing for a unanimous court, reaffirmed the holding in *Pizzola* by stating that "[t]he commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. . . . [T]he use of [technical and professional] assistance . . . cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." (Citations omitted; internal quotation marks omitted.) Professor Terry J. Tondro cogently summed up the principle as follows: "[T]he general rule is that information may not be considered by board members that has not been presented at the public hearing itself." T. Tondro, Connecticut Land Use Regulation (1983 Sup.) p. 100.

At the public hearing on the permit application, Gardiner hotly contested the application and presented expert testimony raising concerns on the location of the detention basin. The majority, however, apparently dismisses Gardiner's claim for lack of ripeness. In other

words, the majority claims that Gardiner's due process rights are triggered only when, and if, the commission actually *receives* an "ex parte" communication and *then* fails to hold a public hearing. This rule that the majority now adopts fails to take into account the very nature of the commission's actions. The commission's decision to *grant* the permit on the condition that more information and technical data be furnished makes any further public hearings solely within the uncontrolled discretion of the commission. The due process rights of Gardiner should not depend upon the whim of the commission to choose to hold an additional hearing, as the majority appears to suggest.[1] It is fundamental that due process of law requires that Gardiner be heard "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965).

The majority also seems to suggest that should the commission not choose to hold an additional public hearing, Gardiner and other interested parties could obtain access to the information submitted to the commission pursuant to General Statutes § 1-19 of the Freedom of Information Act. The majority concludes that this procedural morass will allow Gardiner and other opponents the opportunity to "inform the commission of any inadequacies that he may discover or any additional concerns raised by the information received." Even if this could be considered a substitute for cross-exami-

---

[1] It is of little consolation that the commission regulations provide that should the "activity for which [the commission] has . . . granted a permit with conditions, [have] a more severe impact or effect on the inland wetland or watercourse than was projected by the applicant . . . the [commission] may revoke such permit . . . ." Waterford Inland Wetlands Regs. § 5.10. Also, there is no way in which an administrative appeal could be taken in order to challenge the commission's failure to revoke the permit. Therefore, the regulation does not detract from the unbridled discretion with which the majority cloaks the commission.

nation and the right to present rebuttal evidence, which it cannot,[2] by then the right to appeal from the decision granting the permit would have expired. The majority, apparently, has a remedy for this; it points out that if Gardiner, an adjoining property owner, is "adversely affected by pollution resulting from . . . proposed development of an industrial park," he can always request injunctive relief on the basis of an action for nuisance. Of course, this remedy does not take into account the burden of proof necessary to establish the nuisance, the timeliness of the remedy, the costs of pursuing another action and all other matters that could either make it unavailable or an ineffective remedy.

In the present case, the majority, in an attempt to justify its decision, points out that General Statutes § 22a-42a (d) specifically authorizes the commission to grant permits "upon such terms, conditions, limitations or modifications of the regulated activity . . . ." The "conditions" to which § 22a-42a (d) refer, however, are not those that will determine whether the regulated activity should be permitted in the first instance, but are merely stipulations for allowing the activity in return for other environmental considerations. See *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 715, 563 A.2d 1339 (1989) (approval of filling in a pond on condition the applicant provide compensation for wetland development or other enhancements). The sentence preceding the authority for "conditions" in § 22a-42a (d) makes this clear by requiring the commission to "state upon the record the reason for its decision" either to grant or to deny the permit application. In the present scenario, all the *reasons* for granting the permit will not be known until the ex

---

[2] The purpose of cross-examination and the presentment of additional evidence is not to satisfy the presenter, but to develop and test evidence that would be of an aid to the decision maker, in this case the commission, in making an informed decision, as well as to establish a record for appeal.

parte evidence has been submitted, assuming that the information satisfies the commission that the conditions have been met. Only then could the commission adequately state upon the record its reason for granting the permit.

Allowing the commission thus to put the cart before the horse requires the opponents to the permit to appeal the commission's approval without knowing all the reasons why the permit was granted. This bizarre result arises because of the majority's interpretation of § 22a-42a (d) and because the statutory time frame in which an appeal must be taken begins the moment the decision of the commission is published. General Statutes § 22a-34. Because approval of the permit was based, in part, on information that may not be submitted during the thirty day appeal period, the opponents are left to guess at the basis for the action they are challenging. Requiring parties to stumble through the dark in search of their legal rights does not comport with due process.

Interpreting § 22a-42a (d) as the majority does could also mean that the commission would have the broad power to grant applications for regulated activities on the basis of certain conditions, the satisfaction of which would not be subject to public scrutiny or appellate review. This interpretation makes a mockery out of the statutory protections afforded to those statutorily and classically aggrieved as well as to environmentalists given standing under General Statutes § 22a-19. I cannot believe that the legislature intended that result. "We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . . If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable. . . ." (Citations omitted.) *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991).

By allowing a commission's decision to be based on evidence that is not subject to cross-examination and rebuttal at a public hearing, the majority undermines the beneficial purposes of the Inland Wetlands and Watercourses Act. The legislative finding contained in General Statutes § 22a-36 provides, inter alia, that "[t]he inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. . . . The preservation and protection of the wetlands and watercourses . . . is in the public interest . . . ." Today, the majority insulates from public scrutiny decisions that could be devastating to those concerned with policing the action of environmental commissions or to other interested persons dedicated to the preservation of these environmental jewels.

Accordingly, I would reverse the judgment of the trial court in Gardiner's case and find that his due process rights have been violated by the commission's act of granting the permit with the condition of allowing ex parte communications, without giving Gardiner the right to be heard on those issues in a meaningful manner. In regard to *Fromer* v. *Reynolds Metals Development Co.*, I concur with the majority.