[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative or record appeal by the plaintiff, CT Page 4713 the Connecticut Conservation Association, from a decision of the defendant Bridgeport Zoning Commission (Commission) granting to defendant The Price Company (Price Club), coastal site plan approval and a special permit for filling. The property in question consists of thirty-seven acres and is located off Seaview and Stratford Avenues in Bridgeport. The site has approximately 1300 feet of frontage on Yellow Mill Channel, a tributary to the Bridgeport harbor and the waters of Long Island Sound.
The current owner of the property is Carpenter Technology Corporation, which operated a steel fabricating plant on the premises for many decades. The property is under contract of sale to the Price Club, which proposes to construct a retail shopping center with a total of approximately 380,000 square feet of building area, including a structure for the Price Club itself of approximately 110,000 square feet. The proposal, which involves parking for about 2100 automobiles, also encompasses several restaurants, a waterfront promenade of over 1000 feet, and two fishing piers, all open to the general public.
The zone in which the premises are located is designated Heavy Industrial and retail use is permitted in this particular zone. In order, however, to build a shopping center on this site, the Price Club must obtain coastal site plan approval because the property is located within a coastal boundary as defined in General Statutes 22a-94 (b). See also Bridgeport Zoning Regulations, Chapter 19, Section 7(b)("[a]ll buildings, uses and structures lying fully or partly within the coastal boundary, as defined by Section 22a-94 of the Connecticut General Statutes . . . shall be subject to . . . coastal site plan review"). In addition the Price Club sought a special permit for excavating and filling.
Public hearings were held on May 28, 1991 and June 5, 1991. Thereafter the defendant Commission approved the site plan and granted the special permit by a vote of three to two. The Commission gave two reasons for approval: that the proposal would not have an unacceptable adverse effect on the environment; and that it would benefit an economically "depressed" area of the City of Bridgeport. The two dissenters opposed the proposal on the basis that it would have an adverse environmental impact, was not a water-related use, and did not comply with the Coastal Area Management Plan of Development portion of the Bridgeport Master Plan.
The plaintiff, an environmental non-stock corporation with its principal office in Brookfield, intervened at the public hearing pursuant to General Statutes 22a-19 (a), Connecticut's Environmental Protection Act of 1971 (intervention permitted upon filing "a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which CT Page 4714 is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state"). The defendants agree that plaintiff has standing to raise environmental issues in this appeal. See Red Hill Coalition. Inc. v. Conservation Commission, 212 Conn. 710, 715, 563 A.2d 1339 (1989).
After the defendant Commission approved the coastal site plan and granted the filling permit, the plaintiff appealed both decisions to this court pursuant to General Statutes 8-8 and22a-19. The appeal alleges that the Price Club proposal would cause an adverse impact on the environment; that the proposed retail use is not "water-dependent," as that term is defined in General Statutes 22a-93 (16), the Connecticut Coastal Management Act (CCMA); that the public was not being afforded adequate access to the waterfront; that the approval of the application violated the Coastal Management Act's goal of safeguarding the public trust in the air, water and other natural resources; and that there was insufficient evidence to justify the granting of the special permit for filling.
The plaintiff also alleges that one of the members of the defendant commission, a Clarence T. Williams, who voted in favor of the applications, should have been disqualified on grounds of conflict of interest, which claim was the subject of a memorandum of decision by the undersigned dated December 30, 1991, denying the motion for disqualification.
A preliminary matter requiring resolution is a motion by the plaintiff to supplement the record by "undertaking discovery" of officials of the Hazardous Waste Division of the State Department of Environmental Protection (DEP) and the State Department of Health Services regarding the status of the clean-up operation of the existing toxic waste on the site. General Statutes 8-8 (k) permits adding to the record if necessary for the "equitable disposition" of an administrative appeal. See Tarasovic v. Zoning Commission, 147 Conn. 65, 69, 157 A.2d 103 (1959).
The proposed discovery was to be in the form of either written interrogatories or an evidentiary hearing before the court. A similar request to supplement the record in this case was denied by Judge Katz on September 13, 1991. Moreover, I believe that evidence from the Hazardous Waste Division or Health Services is not necessary for the equitable disposition of this case. The presence of toxic waste on the site is obviously of major significance and must be remedied to the satisfaction of DEP. However, the status of the clean-up of the contamination, under the aegis of the Hazardous Waste Division, is not a critical feature of this case. Additional testimony from the officials involved would not affect the propriety of the CT Page 4715 Commission's decision in this appeal regarding coastal site plan approval and filling. Thus, plaintiff's motion to supplement the record is denied.
Turning to the merits of the Commission's decision approving the Price Club's coastal area site plan, General Statutes 22a-106
(b) states that in reviewing a coastal site plan a municipal commission must:(1) "consider the characteristics of the site. . .; (2) consider the potential effects, both beneficial and adverse, of the proposed activity on coastal resources and future water-dependent development opportunities; and (3) follow all applicable goals and policies stated in section 22a-92 and identify conflicts between the proposed activity and any goal or policy." Bridgeport's Regulations, Chapter 9, Section 7(d), add that the Commission must also address (i) the capability of the resources to accommodate the proposed use; (ii) the suitability of the project for the proposed site; and (in) the consistency of the proposed project with the goals and policies of the Connecticut Coastal Management Act. In addition, the Commission is required to evaluate the potential benefits and adverse impacts of the project on coastal resources and future water-dependent use of the site. Chapter 9, Section 7(d)6.
The Price Club submitted to the Commission a Coastal Area Management Site Plan and Impact Statement prepared by Kasper Group, the supervising engineers and architects on the project. The report reviewed the goals of the CCMA as set forth in General Statutes 22a-92, and also described the present characteristics of the site, pointing out that the former steel plant has been demolished and the entire thirty-seven acre site is covered with slabs, foundations, and various subsurface installations. The report also noted that the Price Club proposed to bring approximately 85,000 cubic yards of fill to the site, and to build on top of the existing concrete slabs and foundations, thus "capping" the contaminated soil.
According to the report, the project does fall within the definition of a water-dependent use because it "provide(s) general public access to marine or tidal waters," General Statutes 22a-93 (16), although the proposed shopping center itself obviously does not require direct water access. Public access arises from the proposed promenade along the Yellow Mill Channel, two fishing piers, visual access to the water, benches, trees and lighting, the first time this access is possible "in over a century."
The record indicates that the Coastal Resources Management Division of the state DEP reviewed the site plan and impact statement, and stated that the Price Club plan satisfied the water-dependent use criterion as it "offers a water-dependent CT Page 4716 component as required by the standards and criteria of the CCMA." The DEP's coastal resources section also made several recommendations to enhance public access by, for example, seeking a commercial fishing facility, a band shell, and increasing parking for the public access uses. The plaintiff argues that the Price Club has not included every recommendation of DEP in its plans. General Statutes 22a-109 (d) requires that a Commission such as the defendant must "consider" the comments and recommendations of DEP, but is not obliged to adhere to every one.
In addition to DEP approval, the record indicates that the Price Club proposal received favorable reports from the City's engineering and fire departments, Harbor Commission and Water Pollution Control Authority.
The plaintiff has made a number of arguments seeking reversal of the Commission's decision, including that the site plan does not encompass some six acres also owned by Carpenter Technology and under contract to the Price Club, which have frontage on the harbor itself. The plaintiff argues that insufficient safeguards and conditions have been placed on the future use of these acres in terms of there being utilized for some water-dependent use. Any future proposal for these six acres, however, would require approval by the defendant Commission, which would be in a position to ensure a water-dependent use.
The record indicates that the thirty-seven acre site in question is on Yellow Mill Channel, which is described in the Kasper report as too narrow and too shallow to support any traditional water-dependent use. At the public hearings, a realtor described his efforts to interest someone in the site for a standard water use, including "thousands of phone calls," all to no avail.
The plaintiff also refers to a Coastal Area Management section of the Bridgeport Master Plan, which designates the site as "Port/Industrial", thus promoting water-dependent industrial uses, including port activities. The plaintiff argues that the Price Club proposal is contrary to this designation. However, a municipal master plan constitutes a plan of development as defined in General Statutes 8-23, which describes such a plan as indicating a "commission's recommendation for the most desirable use of land within the municipality. . ." It is clear that such a plan of development is "merely advisory" and is not a condition precedent to the enactment of changes in zoning regulations and maps. First Hartford Realty Corp. v. Plan and Zoning Commission of Bloomfield, 165 Conn. 533, 542, 338 A.2d 490 (1973). CT Page 4717
Regarding the "characteristics" of the site in question, one of the three criteria that a municipal agency must consider in evaluating coastal area site plans, the plaintiff complains that the Commission did not fully explore the full extent of toxic waste on the site, which apparently contains oil, nickel and lead. However, as pointed out in connection with the plaintiff's application to supplement the record, a clean-up of the site is under the supervision of DEP and is not an integral part of the Price Club's application to the defendant Commission. The plaintiff's other major claim, that the shopping center is not a "water-dependent" use, has been effectively contradicted by the DEP's determination that the proposal satisfies that requirement.
Moreover, neither the plaintiff nor anyone else offered any expert testimony rebutting the Price Club's site plan and impact statement. As was said in Milardo v. Inland Wetlands Commission,27 Conn. App. 214, 222, ___ A.2d ___ (1992), "[t]he determination of what constitutes an adverse impact on a wetlands is considered to be a technically complex issue," and I believe this would be equally true of an adverse impact on a coastal area. Denial of an application is not warranted where "all the expert testimony was to the effect that the proposed activity would not adversely affect the wetlands," Id., 222, or, as in this case, the coastal area.
As to the second reason given by the defendant Commission for its approval of the Price Club's application, viz., aid to an economically depressed area, General Statutes 22a-92 (a) makes reference to promoting "sound economic growth," as does Chapter 19, Section 7(a) of the Bridgeport Zoning Regulations ("sound economic growth shall take place within Bridgeport's coastal area . . . in such manner that the coastal resources . . . shall be preserved and enhanced"). On the other hand, there is no specific reference to "depressed" areas. In any event, as stated in Milardo v. Inland Wetlands Commission, supra, 218, "this court will not disturb an agency decision as long as there is substantial evidence in support of any one reason given for the agency's action." The Commission's finding that the proposal would not have an unacceptable adverse effect on the environment falls into that category.
The second phase of the application involved a request for a special permit for placing fill in a property located in a coastal zone. Chapter 19, Section 9 of the Bridgeport Zoning Regulations provides that the Commission must be satisfied with the applicant's plans for ground stability, storm water runoff, conservation of existing topsoil, preserving trees, preventing pollution, siltation, erosion, loose debris or flying soil or other hazards, and in general, that the plan must conform with CCMA and not be detrimental to the natural environment and CT Page 4718 resources. The Price Club submitted an engineering report including a grading and drainage plan, and a soil erosion control plan which evidenced compliance with all the special permit requirements for filling.
The standard of review by this court in an administrative appeal was reiterated just last week in Gardiner v. Conservation Commission, 222 Conn. 98, 108, ___ A.2d ___ (1992). The standard is whether the record by reason of "substantial evidence" adequately supports the findings and conclusions of the agency. A court must defer to the agency's assessment of the credibility of witnesses, and accord deference to the agency's factfinding function. Id., 108.
There is, in this court's opinion, substantial support in the record by way of expert testimony for the decision of the majority of the Commission granting coastal site plan approval and a permit for filling, and there is no such testimony to the contrary. Accordingly, the decision of the defendant Commission is affirmed and the appeal by the plaintiff is dismissed.
So Ordered.
Dated at Bridgeport, Connecticut, this 28 day of May, 1992.
WILLIAM B. LEWIS JUDGE