WILLIAM W. C. BALL ET AL. *v.* TOWN PLAN AND
ZONING COMMISSION OF THE TOWN OF
WINDSOR ET AL. (4728)

WILLIAM W. C. BALL ET AL. *v.* TOWN PLAN AND
ZONING COMMISSION OF THE TOWN OF
WINDSOR ET AL. (4729)

BALDWIN, KING, MURPHY, MELLITZ and SHEA, Js.

Argued April 15—decided May 8, 1959

*John Poulos,* with whom was *M. Peter Barry,* for the appellants (plaintiffs) in each case.

*Frank J. Monchun,* with whom was *Harry Cooper,* for the appellee (named defendant) in each case and the appellees (defendants Meize) in the second case.

*A. R. Friedman,* with whom, on the brief, was *Gustav P. Nordstrom,* for the appellees (defendants H. C. Thrall and Sons, Inc., et al.) in the first case.

BALDWIN, J. These two appeals from the Windsor town plan and zoning commission involve identical questions of law. They were tried together in the Court of Common Pleas, and the appeals to this court can be disposed of as one.

The defendants H. C. Thrall and Sons, Inc., Ella C. Thrall, William C. Davis, Rebecca Kernan, Salmon Clark and Hudson C. Pelton owned a tract of land, herein referred to as the Thrall property, containing about twenty acres, on Poquonock Avenue west of, and adjoining, the Hartford-Springfield expressway where it crosses Poquonock Avenue on an overpass in Windsor. Poquonock Avenue, like the expressway, runs generally north and south. The defendants Peter J. and Mildred Meize owned a triangular-shaped parcel, approximately two acres in extent, on Poquonock Avenue east of the overpass and adjoining the expressway. Access roads for vehicular traffic from the expressway to Poquonock Avenue were provided at the crossover. On June 25, 1957, the defendants Meize applied to the commission for a change of zone for their property from residence 31 to business 2. Windsor Zoning Regs. §§ 1.02, 2.00, 2.02, 2.03, 3.21 (1956). On July 16, 1957, the defendant owners of the Thrall property similarly applied to change its zoning from residence 31 and agriculture to business 2. Ibid. & § 5.01. Paul L. Rustic owned a parcel of land, 13.5 acres in extent, on the east side of the expressway, east of and across Poquonock Avenue from the Meize property. He also applied for a change of zone from residence 31 and agriculture to business 2, but after

adjacent landowners protested, his application failed to get the unanimous approval of the commission as required by the statute. 21 Spec. Laws 277, § 5; 25 id. 132, § 25. The Meize and Thrall applications were granted by a vote of three to two. The plaintiffs are aggrieved property owners and have appealed.

The general effect of the action of the commission was to create a business zone, wherein business uses generally are permitted, in what was previously the most restricted residence zone. In making this change, the commission could be moved only by considerations of public welfare, appropriate use of the land, and conformance to an established comprehensive plan for the town. Otherwise, its action would be arbitrary and unreasonable. *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 594, 145 A.2d 597; *Hills* v. *Zoning Commission,* 139 Conn. 603, 609, 96 A.2d 212; *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538; *Kuehne* v. *Town Council,* 136 Conn. 452, 460, 72 A.2d 474; 21 Spec. Laws 276, § 3; 8 McQuillin, Municipal Corporations (3d Ed. Rev.) p. 307. Ordinarily, a zone classification should not be changed unless some new condition has arisen which substantially alters the character of the area. *Zoning Commission* v. *New Canaan Building Co.,* 146 Conn. 170, 175, 148 A.2d 330; *Parsons* v. *Wethersfield,* 135 Conn. 24, 30, 60 A.2d 771; 1 Yokley, Zoning Law & Practice (2d Ed.) § 85 (1958 Sup.); 8 McQuillin, loc. cit. The commission could have found that the expressway had been constructed over and across Poquonock Avenue in such a manner that the defendants' properties adjoined the expressway and the access roads leading to it from Poquonock Avenue. This new highway location made it altogether improbable

that the properties would ever be used for residential purposes. Furthermore, a short time previously a large zone for industrial uses had been established in the neighborhood. This zone bordered in part upon the Thrall property. The commission could very properly consider these factors. The minutes of its executive session show that its expressed reasons for making the change were to encourage the most desirable use of the land, to promote a logical and reasonable development of the expressway interchange, and to furnish additional business facilities for the convenience of the residents of the town. The stenographic transcript in the record before the trial court of the hearing held by the commission contains facts which support these reasons. Conceding to the commission the liberal discretion which courts are bound to recognize, we cannot say that its action constituted spot zoning or was arbitrary or unreasonable. *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 62, 89 A.2d 746; *Kutcher* v. *Town Planning Commission,* supra, 710.

The applications of the defendants and Rustic were heard by the commission on August 1, 1957. The plaintiffs urged at the public hearing that the three applications be heard as one because the properties concerned were practically one. They now claim that if all three properties were considered as one, any change of zone for the Thrall and Meize properties would require a unanimous vote of the commission. The plaintiffs rely upon the provision of the special act relating to zoning in Windsor which provides: "If a protest shall be filed . . . against [the] proposed change signed by the owners of twenty per centum or more of the area of the lots included in [the] proposed change

or of those immediately adjacent in the rear thereof extending one hundred feet therefrom, or of those directly opposite thereto extending one hundred feet from the street frontage of such opposite lots, such change shall not become effective except by unanimous vote of the zoning commission." 21 Spec. Laws 277, § 5. The commission considered the three applications individually at the hearing, and acted upon them separately in its executive session, because the applications had been listed separately in the advertisement of the public hearing. The commission was not arbitrary or unreasonable in so doing. The three pieces were not, in fact, one. The expressway passes between the Thrall and Meize properties, and Poquonock Avenue lies between the Meize and Rustic properties. It was within the province of the commission to consider the three applications separately, because it was within its power to differentiate between them if it had reasonable grounds for doing so. See *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 730, 97 A.2d 562. The special act does not require the interpretation urged by the plaintiffs. Furthermore, any such interpretation could prove unworkable and unjust in many conceivable situations.

Charles Baranauckas, who owned sufficient land adjacent to the Thrall property to object effectively to the change of zone for that piece, authorized his son, Gus, to sign the protest petition for him. Gus signed his own name rather than his father's. The plaintiffs argue that to all intents and purposes the signature was as good as though Charles had signed. The statute specifically reads "protest . . . signed by the owners." 21 Spec. Laws 277, § 5. "Sign" means "[t]o affix a signature to; to ratify or attest by hand or seal; to subscribe in one's own handwriting."

Webster, New International Dictionary (2d Ed.). The commission could properly refuse to accept the protest as valid under the statute. The plaintiffs also claim that the provision in § 1.05.03 of the zoning regulations, stating that "[f]ollowing the hearing, the Commission will decide" to adopt or reject a proposed change in the comprehensive plan and rezone property, required the commission finally to dispose of the applications at the conclusion of the hearing on them or to table them for a future meeting. The failure of the commission to do either of these things, the plaintiffs say, invalidates its action. This claim places a strained construction on the regulation. The word "following" does not necessarily mean "next following," or "immediately thereafter." As used in the regulation, the verb is a general term for "going or coming after." Webster, op. cit. It indicates that the commission shall not act until after a public hearing.

There is no error in either case.

In this opinion the other judges concurred.