[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1148
The plaintiffs have appealed the action of the Town Plan and Zoning Commission of the town of Fairfield (commission) granting the application of Fairfield University to resubdivide 13.4 acres of land into forty residential lots and granting a special permit to excavate and fill in connection with that development. In their amended complaint the plaintiffs allege that the commission acted improperly because (1) the resubdivision provides for a cul-de-sac which is the sole access to more than ten building lots, in violation of the subdivision regulations, (2) the application and maps submitted by the university fail to depict principal wooded areas on the land to be resubdivided, in violation of the subdivision regulations, (3) the applicant failed to comply with a subdivision regulation requiring that "[o]ther evidence shall be submitted" in support of the application, (4) the application violated the subdivision regulations which require that "[t]he discharge of all storm water shall be into suitable streams or rivers or into Town drains with adequate capacity," (5) the commission failed to provide for open spaces for parks, playgrounds or recreational areas, (6) the commission granted resubdivision approval notwithstanding deficiencies in the resubdivision application, in violation of its own regulations, and (7) the application requires the "clear cutting" of the 13.4 acres of natural forest, which also is a critical habitat for plants and animals, and the commission failed to consider feasible and prudent alternatives to the university's application as required by General Statutes 22a-19.
 I.
Fairfield University is the record owner of 13.4 acres situated west of North Benson Road. The parcel is situated in an "A" residential zone. In such a zone a single detached dwelling is a permitted use. The university submitted an application to resubdivide this land into forty building lots. The university also filed an application for a special permit to excavate and fill. A public hearing was held at which evidence was taken for and against the applications. Also, at the public hearing the plaintiff Candace Paige filed a notice of intervention pursuant to General Statutes 22a-19(a). The commission subsequently voted to approve both applications, with twenty conditions. CT Page 1149
"This appeal is taken from the decision of an administrative body which sits as both a planning and zoning commission. See Dooley v. Town Plan Zoning Commission,154 Conn. 470, 472-73, 226 A.2d 509 (1967). Although the commission's duties in each category are related, they are separate; Purtill v. Town Plan Zoning Commission, 146 Conn. 570,571, 153 A.2d 441 (1959), cited in Dooley v. Town Plan 
Zoning Commission, supra, 473; and the regulation of the subdivision of land is clearly a function of the planning power." Vose v. Planning Zoning Commission, 171 Conn. 480,483, 370 A.2d 1026 (1976). General Statutes 8-28 provides in pertinent part: "Any appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8." Section 8-8(b) of the General Statutes provides, with certain exceptions not relevant here, "that any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." The statute defines "board" to "mean a municipal zoning commission, planning commission, [or] combined planning and zoning commission. . . ." General Statutes8-8(a)(2). The statute also provides that an "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes 8-8(a)(1). The court finds that the plaintiffs own land that abuts or is within a radius of one hundred feet of the land involved in the decision and, accordingly, they are aggrieved. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 308,592 A.2d 953 (1991).
"It is axiomatic that a planning commission, in passing on a resubdivision application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1988); Westport v. Norwalk,167 Conn. 151, 155, 355 A.2d 25 (1974); Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 57, 521 A.2d 589, cert. denied, 203 Conn. 807, 525 A.2d 521 (1987). It is equally axiomatic that the trial court, in reviewing the action of a planning commission regarding a resubdivision application, may not substitute its judgment on the facts for that of the planning commission. Oakwood Development Corporation v. Zoning Board of Appeals, 20 Conn. App. 458, 460, 567 A.2d 1260 (1990)." R. B. Kent, Inc. v. Planning Commission, 21 Conn. App. 370, 373,573 A.2d 760 (1990). "The standard for judicial review of CT Page 1150 administrative decisions made by local [planning] authorities is `limited to a determination, principally on the record before the [planning] board, whether the [planning] board acted illegally, arbitrarily, or in abuse of the discretion vested in it.'" Gagnon v. Municipal Planning Commission, 10 Conn. App. 54,56, 521 A.2d 589, cert. denied, 203 Conn. 807, 525 A.2d 521
(1987). "`If it appears that the commission has reasonably and fairly exercised its honest judgment after a hearing, the trial court must be cautious about disturbing the decision of the authority.' Raybestos-Manhattan, Inc. v. Planning Zoning Commission, 186 Conn. 466, 469, 442 A.2d 65 (1982); see also Burnham v. Planning Zoning Commission, 189 Conn. 261, 265,455 A.2d 339 (1983). Thus, a trial court must uphold a commission decision unless it was illegal or arbitrary. Often, a court will add `or an abuse of discretion,' yet this has been defined by our Supreme Court as a manner of expression which "`merely points to certain aspects in which the illegality may subsist because the conduct of the board would be in violation of the powers granted to and duties imposed upon it.'" Zenga v. Zebrowski, 170 Conn. 55, 58, 364 A.2d 213 (1975), quoting Jaffe v. State Department of Health, 135 Conn. 339, 353, 64 A.2d 330
(1949)." Id., 57.
 II. A.
Because it is dispositive, the court will first address the plaintiffs' claim that the resubdivision plan fails to make adequate provision for drainage of storm water. Section 3.4 of the subdivision regulations, entitled "Storm-Drainage Design," provides: "Storm drainage shall be provided and designed in accordance with the following standards: 3.4.1 Pipe: Storm water pipe shall be installed in a continuous line for the entire length of all streets to be dedicated to the Town and to carry existing water courses within the subdivision. If, in it's judgment, there will be no substantial danger from soil erosion or danger to the public health and safety the Commission may permit the discharge of rivers and large streams in their natural courses and may permit the discharge of storm water and established water courses in open ditches across proposed lots of one acre or larger. All pipes shall be of such diameter, not less than 12 inches, as will in the judgment of the Town Engineer be sufficient to properly carry storm water expected to enter the pipe from the proposed subdivision and from other CT Page 1151 properties when developed which normally drain across the area of the proposed subdivision. . . ." (Emphasis added)
In his memo to the commission, submitted well over a month before the public hearing on the application, the town engineer stated: "The 15 [inch] pipe size on the eastern portion of Mailands Road Loop and the 18 [inch] connection to the detention pond appear to be undersized for a 10 year storm frequency. Please upgrade sizes or submit calculations." At the public hearing on the resubdivision application, the applicant asserted that its drainage plan was adequate. The applicant first offered but then declined to submit additional data justifying its claim. Subsequently, in condition 15 of its approval of the resubdivision plan, the commission adopted verbatim the above-quoted statement of the town engineer regarding drainage.
Drainage is a subject which goes to the essence of the planning process. "Provisions for adequate drainage are an important consideration in a well-planned subdivision. Thus conditions may be lawfully imposed that require adequate drainage of an area proposed to be plotted and subdivided through the construction of storm sewers or drainage outlets under engineering approval. . . ." 3 Yokely, Zoning Law Practice (4th Ed.) 17-3, page 44; see also 4 Anderson, American Law of Zoning 3d 25.43. Connecticut municipalities have been held monetarily liable for harm resulting from subdivision improvements approved by a planning commission which failed to require adequate provision for drainage. Peterson v. Town of Oxford, 189 Conn. 740, 744, 459 A.2d 100 (1983); Glasson v. Town of Portland, 6 Conn. App. 229, 504 A.2d 550 (1986); Tondro, Connecticut Land Use Regulation, 2d Ed. (Atlantic Law Book Co. 1990), 4.B.3 (p. 226), 7.C.9, 8.E.5; 4 Anderson, op. cit., p. 409; cf. Spitzer v. Waterbury, 113 Conn. 84, 154 A. 157 (1931).
While the commission's adoption of the word "appear" may suggest less than complete conviction, it is evident from the full text of the condition as well as the exchange between the applicant's representative and the commission during the public hearing that the applicant had not borne its burden of proving that its plan satisfied 3.4 of the regulations. Moreover, "appear" means "to have an outward aspect . . . to become evident or manifest." Webster's Ninth New Collegiate Dictionary (1991). Nor can the court say that planning for conditions resulting from a "10 year storm" is beyond the ambit of "normal" drainage. "Normal" simply describes those forces which operate CT Page 1152 periodically or with a certain degree of frequency. In re New Jersey Power Light Co., 9 N.J. 498, 89 A.2d 26, 41 (1952).
The commission's finding in condition 15 that the proposed pipes for drainage were undersized is supported by the record. "Because the commission is composed of laymen it is entitled to professional technical assistance in carrying out its responsibilities. Yurdin v. Town Plan Zoning Commission,145 Conn. 416, 421, 143 A.2d 639 (1958), cert. denied, 358 U.S. 894,79 S.Ct. 155, 3 L.Ed.2d 121 (1958); see Hawkes v. Town Plan 
Zoning Commission, 156 Conn. 207, 212, 240 A.2d 914 (1968)." McCrann v. Town Plan Zoning Commission, 161 Conn. 65, 77,282 A.2d 900 (1971); see Gardiner v. Conservation Commission,222 Conn. 98, 103, 608 A.2d 672 (1992); Spero v. Zoning Board of Appeals, supra 444; Blaker v. Planning Zoning Commission,212 Conn. 471, 478, 562 A.2d 1093 (1989); Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 571, 538 A.2d 1039
(1988). Reports from experts retained by or employed on behalf of a municipality may provide substantial evidence in support of the commission's decision. Bradley v. Inland Wetlands Agency,28 Conn. App. 48, 54-55, 609 A.2d 1043 (1992); Kaeser v. Conservation Commission, 20 Conn. App. 309, 312-313,567 A.2d 383 (1989). It is worthy of note that the commission apprised the applicant about the town engineer's concerns during the public hearing. Compare Norooz v. Inland Wetlands Agency,26 Conn. App. 564, 602 A.2d 613 (1992). More, the commission made it abundantly clear to the applicant during the hearing that it desired further data in support of the applicant's claim that the drainage plan was adequate. At first, one of the applicant's experts agreed to provide this information. The hearing could have been continued for this purpose. General Statutes 8-26d(a). The applicant's attorney then stated that the applicant "would decline to submit anything further than what we've submitted because we, in fact, have complied." Section 1.1.8 of the subdivision regulations expressly provides: "Other evidence shall be submitted establishing . . . that proper provision will be made for water, drainage and sewerage. . . ."
In response to this aspect of noncompliance in the resubdivision plan, the commission could have disapproved or modified and approved the resubdivision plan. See General Statutes 8-26; Krawski v. Planning Zoning Commission,21 Conn. App. 667, 673, 575 A.2d 1050, cert. denied, 215 Conn. 814,576 A.2d 543 (1990). However, it could not condition its approval on the applicant's choice of either upgrading the size CT Page 1153 of the pipe to an unspecified degree, on the one hand, or submitting post-hearing, post — decision data on the other hand. satisfaction of the town engineer or submitted data justifying the proposed fifteen inch pipe to the satisfaction of the town engineer, the commission would not approve the final subdivision map. This is the stuff which fosters additional litigation. It is the public policy of the state to discourage unnecessary litigation. General Accident Ins. Co. v. Wheeler, 221 Conn. 206,213, 603 A.2d 385 (1992); cf. Albert Mendel Son, Inc. v. Krogh, 4 Conn. App. 117, 121-112, 492 A.2d 536 (1985). More fundamentally, condition 15 is poor planning, especially for a subdivision of this magnitude.
While at first blush Gardiner v. Conservation Commission,222 Conn. 98, 608 A.2d 672 (1992), appears to militate in favor of a contrary conclusion, a closer examination of Gardiner reflects that it is inapposite. In Gardiner, an application was made pursuant to General Statutes 22a-42a(c) for a permit to conduct regulated activities on wetlands. The commission granted the application subject to several conditions. The plaintiff intervened before the commission pursuant to General Statutes 22a-19(a) and appealed the decision. On appeal the plaintiff "claim[ed] that certain conditions imposed by the commission allow the ex parte submission of engineering data by Reynolds [the applicant] relevant to whether the permit should have been granted and that he will have no opportunity to challenge the information to be provided, thus depriving him of due process of law in violation of his constitutional right to a fair hearing." Id., 102; see id. 106. The conditions pertained to the possible location of a detention basin in proximity to a landfill. The four conditions required (1) an investigator to determine whether a pollution hazard was created by this proximity, (2) a special design of the basin to prevent seepage between the basin and the landfill, (3) a water monitoring program and (4) the submission of engineering calculations. The Supreme Court held that it "need not consider whether the additional information required to be submitted by Reynolds as a condition of the permit would qualify as a permissible ex parte communication under the standards established by our precedent because that information cannot have had any effect on the decision of the commission presently before us." Id., 103-104.
Gardiner is inapposite because, as viewed by the court, the plaintiff's complaint pertained to the nature of conditions imposed on a wetlands permit, rather than, as here, the CT Page 1154 applicant's entitlement to the permit in the first place. Gardiner supra, 105-106. "Presumably," said the court, Gardiner "would raise no . . . complaint if the commission had simply approved Reynolds' application without imposing the four conditions he challenges, despite the additional protection of the public interest that they afford." Id., 106 (emphasis added). In this connection it is well to observe that a local wetlands commission has a measure of discretion circumscribed by the "substantial evidence" rule; Huck v. Inland Wetlands 
Watercourses Agency, 203 Conn. 525, 539-542, 525 A.2d 940
(1987); in determining whether or not to grant a permit for a regulated activity. Red Hill Coalition Inc., v. Conservation Commission, 212 Conn. 710, 722, 563 A.2d 1339 (1989). General Statutes 22a-42a(d) provides that "[i]n granting, denying or limiting any permit for a regulated activity the inland wetlands agency shall consider the factors set forth in 22a-44. . . ." Section 22a-41 sets forth six distinct, albeit nonexclusive, factors. However, "[t]he statute does not mandate specific reference in the finding and conclusion to any one of the six factors in a `balancing test.' East Haven Economic Development Commission v. D.E.P., 36 Conn. Sup. 1, 8, 409, A.2d 158 (1979)." Fromer v. Boyer-Napert Partnership, 42 Conn. Sup. 57,599 A.2d 1074 (1990), affirmed, 26 Conn. App. 185, 599 A.2d 398 (1991). By contrast, in acting on a subdivision application, a local planning commission has no such discretion or choice but to approve, disapprove, or modify a subdivision plan depending only on whether the plan conforms to the subdivision regulations; Reed v. Planning Zoning Commission, 208 Conn. 431, 433,544 A.2d 1213 (1988); Forrest Construction Co. v. Planning Zoning Commission, 155 Conn. 156, 669, 674-675, 236 A.2d 917 (1967) which themselves must be reasonably specific. Sonn v. Planning Commission, 172 Conn. 156, 159-160, 374 A.2d 159 (1976). For a commission to find that inadequate provision has been made for drainage, or for any of the other critical matters enumerated in General Statutes 8-25, but to nonetheless approve a resubdivision plan subject to vaguely expressed changes in the plan or the submission of further data, at the applicant's option, subverts the planning process.
Secondly, unlike subdivision approval, a permit to conduct a regulated activity in wetlands may be revoked if "the applicant has not complied with the conditions . . . set forth in the permit. . . ." General Statutes 22a-42a(d). Indeed, the local regulations in Gardiner contained a similar provision. Gardiner v. Conservation Commission, supra, 104 n. 3. No similar CT Page 1155 provision is contained in Connecticut's statutes governing planning; General Statutes 8-18 et seq.; nor in any regulation of the defendant commission. Approval of a subdivision or resubdivision cannot be revoked.
Clearly, this is not a case where the commission's decision may be salvaged simply by this court's invalidation of condition 15. See e.g. Beckish v. Planning Zoning Commission, 162 Conn. 11,18, 291 A.2d 208 (1971). The proposed plan did not satisfy 3.4 et seq. of the regulations and condition 15 was an integral, albeit ineffectual, attempt by the commission to remedy that noncompliance. Vaszauskas v. Zoning Board of Appeals, 215 Conn. 58, 65-67, 574 A.2d 212 (1990). Nor can the court divine what drainage plan would be adequate and thus "modify or revise the decision" of the commission pursuant to General Statutes 8-8(1).
While the appeal must be sustained for this reason the court will examine the remaining claims of the plaintiffs in the interest of judicial economy should there be further review. See e.g Arway v. Bloom, 29 Conn. App. 469, 482, ___ A.2d ___ (1992).
 B.
The plaintiffs claim that the proposed subdivision violates 2.1.6 of the subdivision regulations which proscribes streets closed by cul-de-sacs from providing sole access to more than ten building lots.
The street created by the resubdivision is named Mailands Road. It is shaped, roughly speaking, like a horseshoe. Near the "toe" end of the horseshoe, it extends out about 120 feet to connect with, and to provide the only access to, North Benson Road, a state highway. The "heel" base of the horseshoe is connected. Also, each side of the "heel" base extends out about 200 feet, servicing additional building lots and terminating in circular turnarounds. One of these turnarounds is adjacent to North Benson Road but is to be separated from that road by twenty-to-thirty feet of "grasscrete" or lawn.
Section 2.1.6 of the subdivision regulations provides: "Cul-de-sacs, streets closed at one end by building lots and which will not be extended in the future, shall provide sole access to not more than ten (10) building lots." CT Page 1156
"The full panoply of principles of statutory construction are available in the construction of" land use regulations. East Lyme v. Waddington, 4 Conn. App. 252, 259 n. 2,493 A.2d 903, cert. dismissed, 197 Conn. 811, 499 A.2d 61 (1985); see also Preston v. Department of Environmental Protection,218 Conn. 821, 829 n. 9, 591 A.2d 421 (1990). Although the land-use agency's "time-tested" interpretation of its regulations "is accorded great weight by the courts;" Texaco Refining 
Marketing Co. v. Commissioner, 202 Conn. 583, 599, 522 A.2d 771
(1987); there is no showing that 2.1.6 has ever before been interpreted by the commission. In such a case, the construction and interpretation of the regulation is a question of law for the courts. State Medical Society v. Board of Examiners in Podiatry, 208 Conn. 709, 718, 546 A.2d 830 (1988); see Czajkowski v. Planning Zoning Board, supra, 288; East Lyme v. Waddington, supra; Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 268, ___ A.2d ___ (1992).
When a land use regulation "defines the terms as they are used in it, such definition is exclusive of all others." Neptune Park Assn. v. Steinberg, 138 Conn. 357, 362, 84 A.2d 687
(1951). Here, 2.1.6 contains its own definition of cul-de-sacs as "streets closed at one end by building lots and which will not be extended in the future." When the regulatory definition "is clear and unambiguous on its face, we will look no further." New London v. Zoning Board of Appeals, 29 Conn. App. 402, 406, ___ A.2d ___ (1992). In the context of this case, specifically the configuration of Mailands Road, 2.1.6 is neither clear nor unambiguous, if only because by defining a cul-de-sac as a street "closed at one end" it contemplates a street with only two "ends." Mailands Road is hardly such a street. In such a circumstance a court must resort to the tools of statutory construction. Capalbo v. Planning Zoning Board of Appeals,208 Conn. 480, 486, 547 A.2d 528 (1988).
"`A statute should be interpreted according to the policy which the legislation seeks to serve.' Aaron v. Conservation Commission, 183 Conn. 532, 538, 441 A.2d 30 (1981); see 2A J. Sutherland, Statutory Construction (4th Ed.) 56.01 through 56.02." Frito-Lay, Inc. v. Planning Zoning Commission,206 Conn. 554, 574, 538 A.2d 1039 (1988). General Statutes 8-25
states in pertinent part that subdivision regulations shall provide that proposed streets shall be "arranged . . . as to provide an adequate and convenient system for present and prospective CT Page 1157 traffic needs." Section 2.1 of the subdivision regulations, in furtherance of this mandate, provides: "Streets shall be planned in such a way as to provide a safe and convenient street system for present and prospective traffic." The provision pertaining to cul-de-sacs is but a subsection of this portion of the regulations. A requirement that a dead-end or cul-de-sac not provide sole access to more than a limited number of lots is not uncommon. The policy served by such a regulation is that residents and emergency vehicles have adequate access to all land. 4 Anderson, American Laws of Zoning 3d 25.35; Rathkopf's The Law of Zoning Planning (4th Ed. Ziegler) 65.02(3). This policy is subserved by requiring that streets closed at one end and which do not connect with any other street except at one point shall provide sole access to not more than 10 building lots. 25 C.J.S., Cul De Sac, p. 27; Gilfillan v. Shattuck,142 Cal. 27, 75 P. 646, 648 (1904); Perrin v. N.Y. Cent. R. Co., 40 Barb. 65, 70 (N.Y. 1863).
The plaintiffs claim that the entire configuration of streets constituting Mailands Road is a cul-de-sac. The court cannot agree. Although the applicant named this entire configuration of streets "Mailands Road," it is clear that there are separate intersecting streets for purposes of 2.1.6. It is the substance and reality of the proposed subdivision which must comply with the applicable regulations. "[T]he label adds nothing." Caporale v. C.W. Blakeslees Sons, Inc., 149 Conn. 79,86, 186 A.2d 160 (1961). No single street — or section of the "horseshoe" — provides sole access to more than ten lots. The "heel" portion of the horseshoe is not a cul-de-sac notwithstanding that it has turnarounds at two ends, one of which is closed by building lots, because its intersection with the lateral sides of the horseshoe are additional, albeit unclosed, "ends." This subserves the policy of the regulation that residents and emergency vehicles have adequate access to all land. The resubdivision plan does not violate 2.1.6 of the subdivision regulations.
 C.
The plaintiffs claim that the defendant commission violated 1.1.3 of its regulations by approving the subdivision plan because the applicant's preliminary map did not depict the location of principal wooded areas.
Section 1.1 of the subdivision regulations, entitled CT Page 1158 "Requirements for Preliminary Consideration" provides in pertinent part: "Before the Commission shall consider any proposed subdivision, the following requirements shall be met and information submitted by the person, firm or corporation proposing a subdivision: 1.1.1 Application: Application for approval of a subdivision shall be made to the Commission in writing. . . . 1.1.3 Map: A preliminary map shall be submitted showing . . . the location of principal wooded areas." (Emphasis added) At oral argument before the court it was conceded that the preliminary map, which also was used as the final plan, did not depict the location of principal wooded areas. Curiously, there is no requirement that the final subdivision plan depict wooded areas.
A land use plan must be in substantial compliance with the applicable regulations. See e.g. Michel v. Planning Zoning Commission, 28 Conn. App. 314, 324, 612 A.2d 778 (1992), cert. denied, 223 Conn. 923, 614, A.2d 824, (1992); cf. H S Torrington Associates v. Lutz Engineering Co., 185 Conn. 549,555, 441 A.2d 171 (1981) (substantial compliance with mechanic's lien statutes sufficient); State v. Godek, 182 Conn. 353, 360,438 A.2d 114 (1980), cert. denied, 450 U.S. 1031,101 S.Ct. 1741, 68 L.Ed.2d 226 (1981) (substantial compliance with court rule for acceptance of guilty plea sufficient); but see Resnick v. Civil Service Commission, 156 Conn. 28, 32-33, 238 A.2d 391
(1968) (substantial compliance with civil service law not sufficient). Substantial compliance with a statute or regulation is such compliance with the essential requirements of the statute or regulation as is sufficient to assure its objectives. Wheeler v. District of Columbia Board of Zoning Adjustment, 395 A.2d 85, 90 (D.C.App. 1978); see Superior/Ideal, Inc. v. Board of Review of City of Oklahoma,419 N.W.2d 405, 407 (Iowa 1988); City of Kansas City v. Board of County Commissioners of Wyandotte County, 213 Kan. 777, 518 P.2d 403,410 (1974). What constitutes substantial compliance, of course, is a matter depending on the facts of each particular case. Dorignac v. Louisiana State Racing Commission, 436 So.2d 667,669 (La.App. 1983). A map which does not depict wooded areas does not substantially comply with a requirement that it depict the location of principal wooded areas. This is so even if the map fully complies with other requirements. Moreover, while members of a local land use commission "are entitled to take into consideration whatever knowledge they acquire by personal observation"; Burnham v. Planning Zoning Commission,189 Conn. 261, 267, 455 A.2d 339 (1983); there is no authority CT Page 1159 for presuming such personal knowledge by commission members in order to excuse compliance with a requirement in the regulations for a proposed subdivision map.
Nonetheless, the plaintiffs cannot prevail on this claim for four reasons. Firstly, the rule is that "if the subdivision plan does not conform to the regulations the plan must be disapproved." Westport v. Norwalk, 167 Conn. 151, 158,355 A.2d 25 (1974) (emphasis added). General Statutes 8-26, governing approval of subdivision and resubdivision plans, does not even provide for preliminary plans. See Finn v. Planning Zoning Commission, 156 Conn. 540, 244 A.2d 391 (1968). Secondly, although the regulations here do provide that "[a]fter the Commission has approved the preliminary maps and plans, the applicant may proceed to prepare a final subdivision map and final construction plans in accordance with the preliminary maps and plans are approved"; Subdivision Regulations of the Town of Fairfield 1.2; there is no regulation expressly prohibiting approval of a subdivision plan because of a deficiency in a preliminary plan. Thirdly, at the public hearing, a representative of the applicant conceded that eighty percent of the site was wooded. Thus, the commission knew that virtually the entire parcel was a wooded area. Fourthly, there is no issue here that any legal significance attached to any purported approval of the preliminary plan, such as immunization to intervening changes in zoning or subdivision regulations. See General Statutes 8-28a, 8-28b; see Hubbard v. Planning Commission, 154 Conn. 252, 224 A.2d 556 (1966); Harris v. Planning Commission, 151 Conn. 95, 193 A.2d 499 (1963). The commission did not act illegally in approving the resubdivision plan notwithstanding the failure of the preliminary plan to depict principal wooded areas.
 D.
Section 1.1.1g of the subdivision application provides that an application for approval of a subdivision shall state the "existence of mortgage or other encumbrance on the property including name and address of mortgagee." The application did not contain this information. Notably the preprinted application form prescribed by the commission has no provision for this information. The plaintiffs claim that the applicant's failure to provide this information renders the commission's subsequent approval of the resubdivision plan illegal. The applicant argues that the requirement regarding mortgage CT Page 1160 information relates only to preliminary consideration of the plan. The court concludes that the regulations provide for but one application, pursuant to which both the preliminary plan and the final plan are submitted. See Harris v. Planning Commission, supra, 99. Nonetheless, the applicant's failure to provide the prescribed mortgage information did not render the commission's approval of the resubdivision plan illegal.
The omission here does not pertain to any of the criteria in General Statutes 8-25 to which subdivision regulations may, and in some cases must, pertain. Notably, the applicant freely admitted before the commission that there existed a substantial mortgage in favor of the Sisters of Notre Dame De Namur, Inc., from whom the applicant had purchased the subject property. The plaintiffs do not claim any prejudice as a result of the omission of the mortgagee's name in the application. See Shailer v. Planning and Zoning Commission, 26 Conn. App. 17, 23,596 A.2d 1336 (1991). Since the omission was neither raised by the plaintiffs before the commission nor raised by them in their complaint in this court, what was said in Chesson v. Zoning Commission, 157 Conn. 520, 254 A.2d 864 (1969), is pertinent here: "If the plaintiffs had raised the issue before the . . . commission, it could properly have refused to accept and act on the petition. Ball v. Town Planning and Zoning Commission,146 Conn. 397, 402, 151 A.2d 327 [1959]. A failure to comply with the condition, however, amounted only to an irregularity which did not destroy the jurisdiction of the . . . commission to act on the petition. If raised in timely fashion, the defect could readily have been cured. . . . By failing to make timely objection the plaintiffs have waived their right to attack the petition on the ground now claimed." Id., 527; cf. Upjohn v. Planning and Zoning Commission, 224 Conn. 82, 89 ___ A.2d ___ (1992). The commission did not act illegally in approving the plan for resubdivision notwithstanding the omission from the application of the existence of a mortgage and the name and address of the mortgagee.
 E.
The plaintiffs next claim that the commission acted illegally in approving the resubdivision plan because the applicant failed to comply with 1.1.8 of the subdivision regulations. That section provides that in addition to an application, maps and drawings, "[o]ther evidence shall be submitted establishing that the land to be subdivided is of such CT Page 1161 character that it can be used for building purposes without danger to health or the public safety, that proper provision will be made for water drainage and sewerage and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provision will be made for protective flood control measures, that in places deemed proper by the Commission open spaces for parks and playgrounds will be established, and if the Commission shall have adopted a Master Plan affecting the area of the proposed subdivision, that any proposed street shown on the subdivision plan is in harmony with existing or proposed principal thoroughfares shown on said Master Plan especially in regard to safe intersections with such thoroughfares." The plaintiffs claim that there was no "other evidence" that Mailands Road would be in harmony with North Benson Road, "especially in regard to safe intersections with" North Benson Road.
The court cannot agree with the applicant's contention that 1.1.8 may be satisfied by invoking the rule that a land use commission may rely on the personal knowledge of its members concerning matters of traffic congestion and street safety. See Feinson v. Conservation Commission, 180 Conn. 421, 427,429 A.2d 910 (1980), and cases cited therein. Employing that rule of law in such a manner renders 1.1.8 a dead-letter. "Whenever possible, the language of [land use] regulations will be construed so that no clause is deemed superfluous, void or insignificant." Planning and Zoning Commission v. Gilbert,208 Conn. 696, 705, 546 A.2d 823 (1988). In addition, "[t]he regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible." Kleinsmith v. Planning and Zoning, 157 Conn. 303, 313, 284 A.2d 486 (1968). Thus construing 1.1.8, it is evident that the legislating authority contemplated that the applicant adduce "other evidence" and that it not devolve to the commission members to rely on their personal knowledge of local conditions to ensure that the concerns enumerated in 1.1.8 were satisfied. Finally, such a pervasive reliance on commission members' personal knowledge may invalidate its decision on the matter before it when, as here, such knowledge is not disclosed on the record so as to "allow an adversely affected party an opportunity to rebut at an appropriate stage of the proceedings." Palmisano v. Conversation Commission, 27 Conn. App. 543, 548, 608 A.2d 100
(1992).
However, a land use commission "is not bound by the strict CT Page 1162 rules of evidence.' Parsons v. Board of Zoning of Appeals, 140 290, 292, 99 A.2d 149 (1953), overruled on other grounds, Ward v. Zoning Board of Appeals, 153 Conn. 141, 146-47, 215 A.2d 104
(1965). It may accept the statement of facts made at a public hearing by counsel for an applicant "in lieu of sworn testimony and . . . give to it such credence and weight as, in [the] minds of its members, it merited." Parsons v. Board of Zoning Appeals, supra, 293. At the public hearing on the application for resubdivision, the applicant's attorney responded to inquiries regarding traffic and the two proposed intersections with North Benson Road. For this reason the court cannot hold that the applicant failed to submit other evidence regarding that matter.
 F.
The plaintiffs' claim that the commission illegally approved the resubdivision application notwithstanding the applicant's noncompliance with 1.1.8 is inextrically related to their broader claims that the resubdivision is a danger to public health and safety because it creates unsafe intersections and unsafe traffic conditions. This claim, in turn, is inextricably related to the plaintiffs' claim that the commission improperly relied on TLC Development, Inc. v. Planning and Zoning Commission, 215 Conn. 527 577 A.2d 288
(1990), and Sowin Associates v. Planning and Zoning Commission,23 Conn. App. 370, 580 A.2d 91 (1990), cert. denied, 216 Conn. 852,583 A.2d 131 (1990).
Whether the commission applied an improper legal standard in approving the application for resubdivision cannot be determined on this record. The minutes of the meeting at which the commission acted on the application simply reflect the disposition of a motion to deny the application without prejudice and the subsequent successful motion to approve the application subject to several conditions. No deliberations and no reasoning by the commission is disclosed by those minutes. It is true that at the public hearing, the applicant asserted that TLC and Sowin foreclosed the commission from considering matters relating to traffic and the intersection of proposed streets. "`Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly; Brookfield v. Candlewood Shores Estates, Inc., 201 Conn. 1, 7, 513 A.2d 1218 (1986); Balch Pontiac-Buick, Inc. v. Commission of Motor Vehicles, 165 Conn. 559,568, 345 A.2d 520 (1973); Hills v. Zoning Commission, 139 Conn. 603, CT Page 1163 608, 96 A.2d 212 (1953); the burden on such a claim rests upon the person asserting it.' Huck v. Inland Wetland and Watercourses Agency, 203 Conn. 525, 537, A.2d 940 (1987)." Fonfara v. Reapportionment Commission, 222 Conn. 166 177,610 A.2d 153 (1992). In light of this well-settled presumption, which has long been applied to the members of local land use boards; St. Patrick's Church Corporation v. Daniels, 113 Conn. 128,139, 154 A. 343 (1931); the court cannot find that the commission acted on the basis of a misunderstanding of the law. See generally, Huck v. Inland Wetlands and Watercourses Agency, supra; Rompe v. King, 185 Conn. 426, 431, 441 A.2d 114 (1981); Lieb v. Board of Examiners for Nursing, 177 Conn. 78, 85,411 A.2d 42 (1979); Ives v. Lynn 7 Conn. 505, 512 (1829). However, a discussion of the applicable rules of law with respect to traffic and intersecting streets is necessary in order to properly address the plaintiffs' claim as to those issues and is appropriate in light of the further proceedings before the commission which are likely to ensue as a result of the court's disposition of this appeal.
In Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440,418 A.2d 82 (1979), the issue was to what extent overnight sleeping accommodations at a synagogue was a permitted accessory use. In the course of its opinion, the court, in dicta, stated: "The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." Id., 443. No citation of authority followed this statement.
In TLC Development Inc. v. Planning and Zoning Commission supra, the plaintiff submitted an application for site plan approval for a shopping center, a permitted use in the zone in which the land was situated. The commission denied the application, citing as reasons the increased traffic on Route 1 and on local streets in the vicinity, and the "inconveniently" located rear parking area. Id., 528-529. In acting on an application for site plan approval, a zoning commission acts in an administrative capacity. Allied Plywood, Inc., v. Planning and Zoning Commission, 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied., 199 Conn. 808, 483 A.2d 612 (1984). A site plan application cannot be denied unless it fails to comply with applicable regulations. Kosinski v. Lawlor, 177 Conn. 420, 427,418 A.2d 66 (1979). Similarly "[a] municipal planning CT Page 1164 commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and . . . has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Forest Construction Co., v. Planning and Zoning Commission, 155 Conn. 669, 674-675, 236 A.2d 917
(1967). In TLC, the Supreme Court held that the reasons for which the site plan application had been denied, traffic and inconvenient on-site parking, were referable only to general objectives set forth in the local regulations and that a provision of those regulations explicitly provided that general objectives could only serve as a basis for modifying a proposed site plan. However, the TLC court also held that off site traffic issues could not be considered because the proposed use was a permitted use. TLC Development, Inc. v. Planning and Zoning Commission, supra 532-533. The TLC court cited the passage from Beit Havurah, quoted supra, in support of its holding.
In Sowin Associates v. Planning and Zoning Commission. supra, the plaintiff applied for residential subdivision approval of land in a residential zone. There was evidence "that the location of the proposed street conforms with State Department of Transportation standards, and that the proposed street would empty onto Foster Street approximately 350 feet from the intersection of Foster Street and Ellington Road to the west and 330 feet from another intersection that is controlled by a three way stop sign to the east." Id., 372. "The commission notified the plaintiff that its application had been denied because of `traffic congestion and safety concerns on Foster Street in the area of the proposed subdivision, and the increase in congestion expected from the proposed subdivision.'" Id., 373. The appellate court, citing TLC, held that since the proposed subdivision was for a residential use, which was a permitted use in that zone, off site traffic issues could not be considered. "`"The designation of a particular use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values or the general harmony of the district."' [Emphasis by the Appellate Court] TLC Development, Inc. v. Planning and Zoning Commission,215 Conn. 527 532-33, 577 A.2d 288 (1990) [quoting Beit Havurah v. Zoning Board of Appeals, supra 443]." Id., 374. In response to an argument by the commission that its action had been grounded in its regulations, the court stated: "General policy statements CT Page 1165 gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit. TLC Development Inc. v. Planning and Zoning Commission, supra, 530 n. 2." Id., 376. This was the state of the law when the commission acted in this case.
Friedman v. Planning and Zoning Commission, 222 Conn. 262,608 A.2d 1178 (1992), altered that state. In Friedman, the commission had denied site plan approval of a permitted use because the plaintiff applicants had failed to submit an off site traffic study as required by the regulations. The plaintiffs appealed, claiming that off site traffic issues were irrelevant under TLC and Beit Hauvrah, supra. The Superior Court dismissed the plaintiffs' appeal. The Supreme Court affirmed. In its decision, the Supreme Court expressly characterized the quote in Beit Havurah, supra, relied on in TLC and in Sowin, as "dicta." Friedman v. Planning and Zoning Commission, supra, 265. Said the court, "TLC and Beit Hauvrah serve to illuminate two propositions with respect to the role of traffic considerations in weighing site plan applications. First, the language of a given zoning regulation may, by its textural content limit the scope of the use of traffic considerations. Second, once a zoning authority establishes that a particular use within a zone is permitted, e.g. an office building or a church, a conclusive presumption arises that such a use in general, does not adversely affect the traffic within the zone. Neither of these tenets, however, precludes an examination into the special traffic consequences of a given site plan when the applicable zoning regulations permit it." Id., 266 (emphasis added). Since in Friedman there was a regulation requiring a site plan applicant to provide an off site traffic study, and since the plaintiffs in Friedman failed to comply with that regulation, the commission acted properly in denying the application.
Four weeks later, the Supreme Court wrote that Friedman had "clarified our holding in TLC and stated that, in a permitted use zone, although a presumption arises that the permitted use does not adversely affect traffic within the zone, `an examination into special traffic consequences of a given site [is permissible] when the applicable zoning regulations permit it.'" Barberino Realty and Development Corp. v. Planning and Zoning Commission, 222 Conn. 607, 616-617, 610 A.2d 1205 (1992) (emphasis in original). However characterized, that CT Page 1166 "clarification" effectively overruled one of the holdings in TLC and overruled the central holding in Sowin Associates v. Planning and Zoning Commission, supra. Schlauch v. Hartford Accident and Indemnity Co, 146 Cal.App.3d 926, 933 n. 6,194 Cal.Rptr 658, 663 n. 6 (1983); 21 C.J.S., Courts, 147.
With the elimination of the conclusive presumption advanced in TLC, the focus in subdivision review reverts back to (1) whether a proposed subdivision plan satisfies the subdivision regulations; Gagnon v. Municipal Planning Commission, supra; (2) whether any subdivision regulation claimed to be violated is grounded in the statute authorizing such regulations; General Statutes 8-25; Sonn v. Planning Commission, 172 Conn. 156,158-159, 374 A.2d 159 (1976); Finn v. Planning and Zoning Commission, 156 Conn. 540, 543-545, 244 A.2d 391 (1968); South East Property Owners and Residents Assn. v. City Plan Commission, 156 Conn. 587, 591, 244 A.2d 394 (1968); and (3) whether the regulation claimed to be violated sets forth adequate standards or is unconstitutionally vague. Barbarino Realty and Development Corp v. Planning and Zoning Commission, supra, 618-620; Ghent v. Planning Commission, 219 Conn. 511,516-519, 594 A.2d 5 (1991) Kosinski v. Lawlor, 177 Conn. 420,423, 418 A.2d (1979); Sonn v. Planning Commission, supra, 159-160; Nicholi v. Planning and Zoning Commission, 171 Conn. 89,92-93, 368 A.2d 24 (1976); Forest Construction Co. v. Planning and Zoning Commission, 155 Conn. 669, 680, 236 A.2d 917
(1967).
Section 1.4.2 of the subdivision regulations provides: "The Commission, after the public hearing if required, shall give final approval to the proposed subdivision if it shall find that the subdivision map and plans and accompanying certificates, documents and data conform to the conditions and requirements of these Regulations." Nothing in the regulations authorizes the commission to deny an application for subdivision solely because the use to which the subdivision will be put will generate traffic. See also Reed v. Planning and Zoning Commission,208 Conn. 431, 544 A.2d 431 (1988).
However, 2.1 of the regulations provides: "Streets shall be planned in such a way as to provide a safe and convenient street system for present and prospective traffic." Certainly the volume of traffic which will travel on a proposed street may affect whether the street will be safe and convenient. See Forest Construction Co. v. Planning and Zoning Commission, CT Page 1167 supra, 673, 675.
The regulations contain specific provisions with respect to intersections. No claim is made that the applicant's plan does not comply with those provisions. Whether the commission could deny the application on the basis of 2.1 alone need not be determined here. While there was considerable and conflicting lay testimony as to the safety of the two proposed intersections of Mailands Road with North Benson Road, including testimony that the proposed plan would triple from six to eighteen the "points of conflict" along this segment of North Benson Road, no expert evidence was adduced as to the safety of these proposed intersections. Compare Builders Service Corporation v. Planning and Zoning Commission, 208 Conn. 267, 294, 545 A.2d 530 (1988); Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53,59, 549 A.2d 1076 (1988). "The safety of the proposed road design is a question of fact." Shailer v. Planning and Zoning Commission, 26 Conn. App. 17, 25, 596 A.2d 1336 (1991). In the absence of such expert evidence this court cannot substitute its judgment for that of the commission nor, on this record, find that the commission could not reasonably resolve the conflicting lay evidence in favor of the applicants. Burham v. Planning and Zoning Commission, 189 Conn. 261, 266,455 A.2d 339 (1983); Calandro v. Zoning Commission, 176 Conn. 439,441 408 A.2d 229 (1979); Gross v. Planning and Zoning Board of Appeals, 171 Conn. 326, 329, 370 A.2d 944 (1976 (); Tarasoric v. Zoning Commission, 147 Conn. 65, 71, 157 A.2d 103 (1959).
 G.
Two other claims advanced by the plaintiffs may be disposed of summarily. Firstly, the plaintiffs complain that the proposed resubdivision fails to provide any open space on the 13.41 acres. Section 2.3 of the subdivision regulations provides in relevant part: "Open spaces for parks, playgrounds or recreational areas shall be provided in places deemed proper by the Commission." While this provision is mandatory as to an applicant, it is permissive as to the commission, reposing in that body broad discretion as to whether and to what extent open spaces for parks, playgrounds, or recreational acres shall be "deemed proper". Cf. Adleman v. Board of Health, 84 Conn. 691,692, 81 A. 1055 (1911); Staples v. Bridgeport, 75 Conn. 509,513, 54 A. 194 (1903). A contrary construction, requiring that open spaces mandated by the commission in every subdivision and resubdivision, would be patently unreasonable and will not be CT Page 1168 presumed. Masone v. Zoning Board, 148 Conn. 551, 556,172 A.2d 891 (1961).
Secondly, the plaintiffs claim that a proposed upgrading of the zone of the remaining property of the applicant from A to AA, thereby increasing the minimum lot size to one acre, was an admission by the commission of the inappropriateness of its decision. "This argument is a nonsequitur"; Moscowitz v. Planning and Zoning Commission, 16 Conn. App. 303, 316,547 A.2d 569 (1988); for which the factual predicate even is missing. "A [planning or] zoning authority must be free to modify its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change." First Hartford Realty Corporation v. Planning and Zoning Commission, 165 Conn. 533, 544,338 A.2d 490 (1973). However, a commission's decision to amend its regulations does not reflect on the propriety of its administration of preceding regulations. Until it has amended its regulations, a planning commission, no less than an applicant, "is bound by its regulations." Nicoli v. Planning and Zoning Commission, 171 Conn. 89, 91, 368 A.2d 24 (1976).
 H.
Finally, the plaintiffs claim that the commission acted illegally in approving a resubdivision plan which would result in "the clear cutting and fill of 13.41 acres in violation of [General Statutes] 22a-19" and the consequential elimination of wildlife which inhabit the forest. While the defendants dispute that the resubdivision plan necessarily involves deforestation to such an extent, it is unnecessary to address that factual dispute. Central to the plaintiffs' claim is that trees and wildlife are "natural resources" as contemplated by General Statutes 22a-19.
General Statutes 22a-19 provides:
 (a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, CT Page 1169 association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.
 (b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare. (Emphasis added).
Pursuant to this statute the named plaintiff filed a notice of intervention in the proceedings before the commission. It now is settled that "22a-19(a) does authorize intervention in a subdivision review proceeding conducted by a municipal planning commission." Red Hill Coalition v. Town Planning and Zoning Commission, 212 Conn. 727, 733, 563 A.2d (1989). In addition, both plaintiffs have filed a notice of intervention in the present appeal.
The plaintiffs claim as the basis for intervention that the trees and wildlife which allegedly would be eradicated by the approved plan of resubdivision are "natural resources". It is beyond question that trees and wildlife are natural resources in the generic sense. See Webster's Dictionary of the English Language (Ency. Ed. 1988) (defining "natural resource" as "what nature has provided and man can make use of, e.g. fertile soil, waterpower, minerals etc."). However, the issue here is whether trees and wildlife are natural resources within the CT Page 1170 contemplation of General Statutes 22a-19. Bound by the analysis in Red Hill Coalition, Inc. v. Planning and Zoning Commission, supra 734-738, the court concludes they are not.
In Red Hill, the Supreme Court held that agricultural land was not a natural resource within the ambit of 22a-19. The court reached this conclusion based on the legislative history of 22a-19, the absence of express mention of agricultural land in 22a-19 as contrasted with other statutes, and the unreasonable result it said would result from a contrary holding. The same tools for ascertaining the legislature's intent militate against holding that trees and wildlife are natural resources. First, an examination of the legislative history of 22a-19 fails to disclose any indication of an intent to include trees and wildlife within the term "natural resources". See 14 S. Proc. Pt. 3, 1971 Sess. pp. 1082-1097. 14 H.R. Proc., Pt. 2, 1971 Sess., pp. 733-765. Second, trees and wildlife are "not mentioned in any other section of the Environmental Protection Act (EPA). General Statutes 22a-14 et seq." Red Hill Coalition, Inc. v. Planning and Zoning Commission, supra, 735. While the plaintiffs observe that trees and wildlife are mentioned in General Statutes 22a-5, which enumerates the "[d]uties and powers of [the] commissioner" of environmental protection, that statute, by legislative designation, is not part of Connecticut's EPA.[1] General Statutes22a-14 provides that "[s]ections 22a-14 to 22a-20, inclusive, shall be known and may be cited as `The Environmental Protection Act of 1971.'" "The legislature's failure to provide for [trees and wildlife] in 22a-19 or in any other section of the EPA is significant because in other statutes where the legislature has chosen to protect [forests, trees and wildlife] it has done so expressly." Id., 736; see General Statutes 7-131, 7-326,12-96 et seq., 16-32g, 16-234, 22a-22(c), 22a-61d, 52-560 and virtually all of title 23 ("Parks, Forests and Public Shade Trees"); General Statutes Title 26 ("Fisheries and Game"). Third, even more so than agricultural land, "[i]f we were to interpret `natural resources' in 22a-19 to include [trees and wildlife] we would potentially be requiring the consideration of alternatives pursuant to 22a-19(b) for every subdivision application in the state. We will not presume that the legislature intended such a result." Id., 738 (footnote omitted).
The court is not unaware of the symbiotic relationship between trees and the "air" which General Statutes 22a-19 does CT Page 1171 seek to protect. However, this court finds Red Hill to be dispositive. The Red Hill court held that agricultural land was not a "natural resource" as contemplated by 22a-19, and General Statutes 1-1(q) provides in relevant part that "[e]xcept as otherwise specifically defined, the words `agriculture' and `farming' shall include . . . forestry. . . ." (Emphasis added.) Moreover, in Red Hill Coalition Inc. v. Town Planning and Zoning Commission, supra, 737 n. 8, our Supreme Court refused to follow Portage v. Kalamazoo County Road Commission, 136 Mich. App. 276,355 N.W.2d 913 (1984), Kimberly Hills Neighborhood Assn. v. Dion, 114 Mich. App. 495, 320 N.W.2d 668 (1982), and Michigan United Conservation Clubs v. Anthony, 90 Mich. App. 99,280 N.W.2d 883 (1979), in which Michigan courts had held that trees and animals were natural resources within the contemplation of the Michigan Environmental Protection Act, M.C.L. 691.1203(1); M.S.A. 14-528 (203)(1). Said our Supreme Court: "We are not bound by the cited cases and do not find them controlling in view of the legislative history and wording of our statutes." Red Hill Coalition, Inc., v. Town Planning and Zoning Commission, supra, 737 n. 8. That this remark is contained in a footnote is of no moment. "A footnote has the same binding force and effect as the language contained in the body of the opinion." Fussenich v. DiNardo, 195 Conn. 144, 157 n. 8,487 A.2d 514 (1985).
Since trees and wildlife are not natural resources protected under 22e-19, the commission was not obliged to comply with 22a-19(b) by considering alternatives to the elimination of trees and wildlife which will allegedly result from the resubdivision plan approved by the commission.
The appeal is sustained.
LEVIN, JUDGE